# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: March 12, 2024

```
* * * * * * * * * * * * * * * * * * * * * * * *
CAROL JOAN GONZALES,              *      No. 20-140V
                                  *
              Petitioner,         *      Special Master Sanders
v.                                *
                                  *
SECRETARY OF HEALTH               *
AND HUMAN SERVICES,               *
                                  *
              Respondent.         *
* * * * * * * * * * * * * * * * * * * * * * * *
```

*Michael S. Kolker*, Otorowski Morrow & Golden, PLLC, Bainbridge Island, WA, for Petitioner.
*Traci R. Patton*, United States Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On February 10, 2020, Carol Joan Gonzales ("Petitioner") filed a petition for compensation pursuant to the National Vaccine Injury Compensation Program.[2] 42 U.S.C. §§ 300aa-10 to -34 (2012). Petitioner alleged that the influenza ("flu") vaccine she received on October 12, 2017, caused her to suffer from "injuries[] including hand injuries and finger paralysis[.]" Pet. at 1, ECF No. 1. On November 1, 2022, the parties filed a stipulation for award. ECF No. 34. I issued a Decision awarding damages consistent with the stipulation on November 30, 2022. ECF No. 35.

On January 9, 2023, Petitioner filed a motion for final attorneys' fees and costs. Pet'r's Mot. for Final Attorneys' Fees and Costs [hereinafter "Pet'r's Mot. for AFC"], ECF No. 40. Petitioner requests total attorneys' fees and costs in the amount of **$64,363.38**, representing **$35,142.10** in attorneys' fees[3] and **$29,221.28** in attorneys' costs. Declaration ¶ 8, ECF No. 41. Pursuant to General Order No. 9, Petitioner has indicated that she has not incurred any personal expenses as a result of this claim. *Id.* ¶ 3. Respondent filed his response on January 12, 2023, stating that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub L. No. 99-660, 100 Stat. 3755.

[3] This amount includes $15,893.60 in attorney's fees, $18,490.00 in paralegal fees, $233.50 for "[a]nticipated [a]ttorney [t]ime[,]" and $525.00 for "[a]nticipated [p]aralegal [t]ime[.]" Declaration ¶ 8.

met in this case." Resp't's Resp. at 2, ECF No. 43. Respondent requested "that the Court exercise its discretion and determine a reasonable amount for attorneys' fees and costs." *Id.* at 3. Petitioner did not file a reply. This matter is now ripe for consideration.

   I.   **Reasonable Attorneys' Fees and Costs**

The Vaccine Act permits an award of reasonable attorneys' fees and costs. § 15(e). The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1348 (Fed. Cir. 2008). This is a two-step process. *Id.* First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* at 1347–48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. *Avera,* 515 F.3d at 1348.

It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521–22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 316–18 (2008). Such applications, however, should not include hours that are "'excessive, redundant, or otherwise unnecessary.'" *Saxton*, 3 F.3d at 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

Reasonable hourly rates are determined by looking at the "prevailing market rate" in the relevant community. *See Blum*, 465 U.S. at 895. The "prevailing market rate" is akin to the rate "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 895, n.11. Petitioners in the Program bear the burden of providing adequate evidence to prove that the requested hourly rate is reasonable. *Id.*

   A. **Hourly Rate**

The decision in *McCulloch* provides a framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney. *McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), *motion for recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). The court has since updated the *McCulloch* rates, and the Attorneys' Forum Hourly Rate Fee Schedules for 2015–2016, 2017, 2018, 2019, 2020, 2021, 2022, and 2023 can be accessed online.[4]

Petitioner requests the following hourly rates for the work of her counsel, Mr. Michael Kolker: $413.00 per hour for work performed in 2019, $431.00 per hour for work performed in 2020, $453.00 per hour for work performed in 2021, and $467.00 per hour for work performed in 2022. Declaration ¶ 5(a). Petitioner also requested the following rates for the work of her counsel's

---

[4] The OSM Fee Schedules are available at: http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are updated from the decision in *McCulloch*. *See* 2015 WL 5634323.

paralegals: $155.00 per hour for work performed in 2019, $160.00 per hour for work performed in 2020, $170.00 per hour for work performed in 2021, and $175.00 per hour for work performed in 2022. *Id.* ¶ 5(c).

I find Mr. Kolker's requested rates commensurate with his experience. Although he has little experience in the Program,[5] his curriculum vitae indicates that he had thirty-seven years of experience practicing law when beginning work on this case in 2019. *See* ECF No. 41-2. The highest rates in the OSM fee schedules, for attorneys with more than thirty-one years of experience in practice, are generally reserved for attorneys with significant experience in the Program, and Mr. Kolker instead appropriately requested rates for attorneys with twenty to thirty years in practice for each year he performed work in this case. The requested rates for Mr. Kolker's paralegals for 2019 and 2020 are consistent with what his firm's paralegals have previously been awarded for their Vaccine Program work. *M.A. v. Sec'y of Health & Hum. Servs.*, No. 18-103V, 2020 WL 7054287, at *2 (Fed. Cl. Spec. Mstr. Oct. 28, 2020). They do not have established rates for 2021 and 2022, but the requested rates are consistent with the 2021 and 2022 OSM fee schedules. I therefore find the rates requested for Petitioner's counsel and counsel's paralegals reasonable.

### B. Reasonable Number of Hours

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera,* 515 F.3d at 1348. Billing for administrative tasks is not appropriate. *See Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989) (stating that services that are "primarily of a secretarial or clerical nature . . . should be considered as normal overhead office costs included within the attorneys' fee rates"); *see also Isom v. Sec'y of Health & Hum. Servs.,* No. 94-770, 2001 WL 101459, at *2 (Fed. Cl. Spec. Mstr. Jan. 17, 2001) (agreeing with Respondent that tasks such as filing and photocopying are subsumed under overhead expenses); *Walters v. Sec'y of Health & Hum. Servs.,* No. 15-1380V, 2022 WL 1077311, at *5 (Fed. Cl. Spec. Mstr. Feb. 23, 2022) (failing to award fees for the review of CM/ECF notifications and the organization of the file); *McCulloch,* 2015 WL 5634323, at *26 (noting that clerical and secretarial tasks should not be billed at all, regardless of who performs them).

Upon review of the submitted billing records, I find the time billed somewhat excessive for the work performed in this case. Mr. Kolker routinely overbilled for time spent reviewing Court orders and filings. For instance, on February 26, 2020, Mr. Kolker billed .2 hours for reviewing a notice of reassignment, which was a one-sentence-long document. ECF No. 41-1 at 2; ECF No. 10. On March 4, 2020, and on November 21, 2021, he billed .25 hours each for reviewing a notice of appearances, which were each two sentences long. ECF No. 41-1 at 2–3; ECF Nos. 12, 27. On October 8, 2020, he billed .75 hours for reviewing the one-paragraph statutory 240-day notice. ECF No. 41-1 at 2; ECF No. 14. On November 24, 2020, he billed .5 hours for reviewing a one-sentence non-PDF scheduling Order. ECF No. 41-1 at 2; Scheduling Order, docketed November 24, 2020. On February 11, 2022, he billed .4 hours for reviewing a one-sentence non-PDF order granting Petitioner's motion for extension of time. ECF No. 41-1 at 3; Order, docketed Feb. 11,

---

[5] He appears to have had one prior case in the Program in 2011. *See Emmons v. Sec'y of Health & Hum. Servs.*, No. 11-211V, 2011 WL 5299382 (Fed. Cl. Spec. Mstr. Sept. 29, 2011).

2022. On April 19, 2022, he billed .2 hours for reviewing Petitioner's own electronic filing. ECF No. 41-1 at 3. Furthermore, Mr. Kolker's paralegals routinely billed for administrative/secretarial tasks. They billed a total of five hours for filing documents; more than eight hours for "[d]ownload[ing], [r]eview[ing], and [p]rocess[ing]" notices of electronic filing and documents from CM/ECF; more than two hours for downloading and verifying copies of Petitioner's own CM/ECF filings; and seven hours for preparing hard copies of documents to send to Respondent. *See* ECF No. 41-1 at 5–9. They also billed seventeen hours to "[p]repare, [r]edact: [c]ertified [m]edical [r]ecords for [e]xhibits[.]" *See id.* However, billing for redacting records is not reasonable because filings in the Program are restricted, and the Supplement to the Vaccine Rules regarding electronic filing procedures specifically states that "[a]ll documents, including medical records, should be filed in their original form." Supp. Vaccine Rule IX.

Petitioner requests $233.50 for "[a]nticipated [a]ttorney [t]ime" and $525.00 for "[a]nticipated [p]aralegal [t]ime." Declaration ¶ 8. Petitioner requested these fees "to address issues after filing of this motion, including: confirmation of all disbursements, preparation of the potential filing of a Joint Decision not to Seek Review, and potential correspondence with . . . Respondent and [Petitioner]." *Id.* ¶¶ 6–7. However, "[i]t is well-established in the Vaccine Program that a claimant 'is not entitled to recover any and all costs that may be incurred in the future, regardless of the reason for the expenditure.'" *Sparkman v. Sec'y of Health & Hum. Servs.*, No. 21-1917V, 2023 WL 3410644, at *2 (Fed. Cl. Spec. Mstr. May 12, 2023) (quoting *Crespo v. Sec'y of Health & Hum. Servs.*, 139 Fed. Cl. 231, 236 (2018)).

Because the Program does not reimburse future fees not yet incurred, I will deduct these fees from the total amount of fees requested by Petitioner, bring the total amount of fees requested to $34,383.60. I find that the other issues described above result in a reasonable deduction of ten percent, or $3,438.36. Accordingly, Petitioner is entitled to final attorneys' fees in the amount of **$30,945.24.**

### C. Attorney Costs

Like attorneys' fees, a request for reimbursement of attorneys' costs must be reasonable. *Perreira v. Sec'y of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioner requests a total of $29,221.28 in attorneys' costs. Declaration ¶ 8. This is comprised of costs for acquiring medical records, Petitioner's filing fee, mailing expenses, an initial expert case evaluation, an expert referral service, expert reports, and binders and dividers. *See* ECF Nos. 41-2–41-3. Petitioner has provided documentation of most of these expenses, and some appear reasonable for the work performed in this case. However, some deductions are necessary.

#### 1. Expert Reports

Petitioner requests $22,950.00 for the work of her expert, Viktoriya Irodenko, M.D., who provided two expert reports in this case. *See* ECF No. 41-2 at 8–9. Dr. Irodenko charged $900.00 per hour for her work. *Id.* She billed 19.5 hours for her work on her first expert report and six hours for work on her supplemental report, and she billed for tasks including review of records, research, and report writing. *Id.* Although the number of hours Dr. Irodenko expended appears reasonable for the work performed in this case, her hourly rate of $900.00 per hour is significantly higher than what experts are typically awarded in the Program.

4

In the Program, "[f]ees for experts are subject to the same reasonableness standard as fees for attorneys for attorneys." *E.g.*, *M.A.*, 2020 WL 7054287, at *3. It is Petitioner's "burden [to] substantiat[e] an expert's hours and the rate requested." *E.g.*, *Kantor v. Sec'y of Health & Hum. Servs.*, No. 01-679V, 2007 WL 1032378, at *2 (Fed. Cl. Spec. Mstr. March 21, 2007); *Caves v. Sec'y of Health & Hum. Servs.*, 111 Fed. Cl. 774, 779 (2013). The Court of Federal Claims has stated:

> In determining the appropriate compensation for experts, a special master may consider the following factors: (1) [T]he witness' area of expertise; (2) the education and training required to provide the expert insight that is sought; (3) the prevailing rates for other comparably respected available experts; (4) the nature, quality and complexity of the [information] provided; (5) the cost of living in the particular geographic area; and (6) any other factor likely to be of assistance to the [Special Master] in balancing the interests implicated by the [Vaccine Act].

*Frantz v. Sec'y of Health & Hum. Servs.*, 146 Fed. Cl. 137, 145 (2019) (quoting *Wilcox v. Sec'y of Health & Hum. Servs.*, No. 90-991V, 1997 WL 101572, at *4 (Fed. Cl. Spec. Mstr. Feb. 14, 1997)) (internal quotation marks omitted).

In her first expert report, filed on July 12, 2021, Dr. Irodenko stated that she is a licensed physician and is board-certified in neurology, neuromuscular medicine, and neuroelectrophysiology. Pet'r's Ex. 17 at 1, ECF No. 22. She noted that she had treated more than thirty-five patients with acute brachial neuritis over the five years preceding her expert report, including patients with vaccine-caused brachial neuritis. *Id.* However, Dr. Irodenko noted that she does "not have any publications about the topic pertinent to this case." *Id.* She wrote that she was working with a colleague at University of California, San Francisco ("UCSF") "to start a novel Multidisciplinary Brachial Neuritis Clinic" and that she expected to "have an active role in this clinic . . . ." *Id.* She noted that she had testified three times in medical-legal matters in the past five years. *Id.* Dr. Irodenko's curriculum vitae ("CV"), filed on June 9, 2021, states that she received her medical degree in 1997 at Ivano-Franklvsk National Medical University in Ukraine. Pet'r's Ex. 16 at 1, ECF No. 21-1. She completed a one-year residency in Ukraine between 1997 and 1998 before completing an internship at Medical Center of Central Georgia between 2001 and 2002, a residency in neurology at Baylor College of Medine between 2002 and 2005, and a clinical fellowship in neuromuscular disorders and clinical neurophysiology at UCSF from 2005 to 2006. *Id.* She received her medical license in California in 2005, and she has been board-certified in neurology since 2008 and in neuromuscular medicine since 2012. *Id.* She has also been certified by the American Association of Neuromuscular and Electrodiagnostic Medicine since 2010. *Id.* Dr. Irodenko joined the faculty of UCSF School of Medicine as a clinical instructor in 2006, and she has been a full professor since 2019. *Id.* at 2. She has been the director of the EMG laboratory and a staff physician in neurology at the San Francisco VA Medical Center since 2006 and the director of the San Francisco VA Medical Center's neuromuscular program since 2007. *Id.* at 2. She became the director of the hospital's multidisciplinary ALS center in 2015, the director of a neuromuscular fellowship program in 2016, and the director of the neurophysiology section in 2017. *Id.*

I find that Petitioner has not met her burden to establish that a rate of $900.00 per hour for Dr. Irodenko's work is reasonable. The two reports Dr. Irodenko submitted in this case are relatively brief and uncomplicated when compared to expert reports often filed in the Program.

*See generally* Pet'r's Ex. 17; ECF No. 29-1.[6] She does not appear to have prior experience in the Program, and she acknowledged that she does not have publications regarding the injury involved in this case. Furthermore, other neurologists located in similar areas and with more extensive experience are typically awarded significantly less for their Vaccine Program work. For instance, Dr. Lawrence Steinman, a Stanford University neurology professor with additional specialty in neuroimmunology, more than forty years of experience as a physician, and extensive experience in the Program, who is also based in the Bay Area, has typically been awarded an hourly rate of $500.00 to $550.00 for his Program work. *See, e.g.*, *Langley v. Sec'y of Health & Hum. Servs.*, No. 17-837V, 2023 WL 7221461, at *3 (Fed. Cl. Spec. Mstr. Sept. 7, 2023) (granting $500.00 per hour for Dr. Steinman's work); *Morrison v. Sec'y of Health & Hum. Servs.*, No. 18-386V, 2023 WL 1873254, at *7 (Fed. Cl. Spec. Mstr. Feb. 10, 2023) (granting $550.00 per hour for work Dr. Steinman performed in 2021 and 2022). It is unclear why Dr. Irodenko should be awarded a significantly higher rate. In fact, while "several neurologists have previously been awarded $500.00 per hour, such a rate is typically reserved for experts who not only possess top of the line credentials, but also have extensive Vaccine Program experience." *Finkelstein v. Sec'y of Health & Hum. Servs.*, No. 19-212V, 2022 WL 3135918, at *2–3 (Fed. Cl. Spec. Mstr. July 1, 2022) (reducing an expert neurologist's hourly rate from $500.00 to $450.00 based on "his credentials and the quality of his work product[,]" as well as his lack of experience in the Program). Even neurologists with extensive Program experience and noteworthy credentials, such as Dr. Carlo Tornatore, whose experience includes a professorship of neurology at Georgetown University Medical Center and a vice chairmanship of MedStar Georgetown University Hospital's neurology department, are typically awarded less than $500.00 per hour. *See, e.g.*, *Abbott v. Sec'y of Health & Hum. Servs.*, No. 14-907V, 2020 WL 8766524, at *5 (Fed. Cl. Spec. Mstr. Dec. 4, 2020) (noting that Dr. Tornatore "typically receives $400 per hour"); *Jones v. Sec'y of Health & Hum. Servs.*, No. 15-1239V, 2019 WL 7496602, at *4–5 (Fed. Cl. Spec. Mstr. Sept. 20, 2019) (reducing Dr. Tornatore's hourly rate from $500.00 per hour to $400.00 per hour for work performed from 2015 to 2017 and to $450.00 per hour for work performed in 2018 "in recognition of the overall work he has provided for the Vaccine Program[]" and his work in the case).

The evidence submitted demonstrates that Dr. Irodenko is qualified to opine in this case, but her work in this case, qualifications, and experience do not warrant a significantly elevated rate, or the rates typically reserved for experts with extraordinary credentials and experience. Based on the evidence submitted as well as the rates awarded to other neurologists in the Program and inflation, I find that a reasonable hourly rate for Dr. Irodenko's work in this case is $450.00 per hour. Accordingly, I will reduce Petitioner's reward by $11,475.00.

2. Initial Expert Evaluation

Petitioner requests $400.00 for an "[i]nitial [c]ase [e]valuation" by Jerome E. Carbone, M.D. ECF No. 41-3 at 2. The billing records submitted show that Dr. Carbone billed for four hours of "[r]ecord review/analysis" at a rate of $100.00 per hour on March 28 and 29, 2019.[7] ECF No. 41-2. However, this record is not sufficiently detailed to indicate the nature of the work Dr. Carbone performed or whether it was necessary to further this case. Furthermore, the billing

---

[6] Petitioner did not label her second expert report with an exhibit number.
[7] Dr. Carbone also billed $600.00 for work performed on April 5, 2019, but Petitioner redacted the title of the service performed and the description of that service. ECF No. 41-2 at 5. Petitioner has not requested reimbursement for this $600.00 charge.

records indicate that Petitioner's counsel's office began preparing Petitioner's client file on January 7, 2019, and did not begin requesting records from Petitioner's medical providers until June 3, 2019. ECF No. 41-1 at 5. Thus, it is unclear what documents Dr. Carbone would have reviewed in March of 2019. Dr. Carbone's qualifications are also unclear. I will deduct this $400.00 from Petitioner's award.

### 3. Expert Referral Service

Petitioner requests $1,950.00 for a "[c]ase [e]valuation and [e]xpert [r]eferral" provided by Elite Medical Expert. ECF No. 41-3 at 2. Petitioner contends that she contacted this company "to identify and refer a specialized expert for the review in this matter[]" because of "the specific neurological injury" alleged in this case. Declaration ¶ 4(a)(i). However, Petitioner has failed to persuasively identify why this service was necessary in this case. Although Petitioner contends that she used this service due to her "specific neurological injury[,]" neurologists frequently serve as experts in the Program and opine on a variety of neurological conditions. In a previous case, the special master found that costs for an expert referral service were unnecessary for this reason. *Halcrow v. Sec'y of Health & Hum. Servs.*, No. 16-212V, 2021 WL 4199921, at *4 (Fed. Cl. Spec. Mstr. Aug. 10, 2021). The special master reasoned that such a service "might be necessary to obtain an expert in a more niche field of medicine," but she did not find it necessary to find an expert neurologist or immunologist. *Id.* The special master noted that "a more practical solution would have been to reach out to their colleagues at the Vaccine Injured Petitioners Bar Association to inquire if other attorneys could recommend a medical expert with the requisite experience given the facts of the [ ] case." *Id.* She awarded 25% of the cost as a courtesy, but she advised that future unnecessary costs would not be reimbursed. *Id.* Although Petitioner has not presented persuasive evidence that this service was necessary, I will similarly award 25% of this cost as a courtesy given Petitioner's counsel's limited experience in the Program. Accordingly, I will reduce Petitioner's award by $1,462.50.

### 4. Office Supplies

Petitioner requests $194.50 for binders and dividers used to provide documents to Respondent and Dr. Irodenko. ECF No. 41-3. However, "[n]ormal overhead costs like office supplies[] . . . are not compensable by the [P]rogram." *E.g.*, *Reed v. Sec'y of Health & Hum. Servs.*, No. 08-650V, 2019 WL 2500417, at *5 (Fed. Cl. Spec. Mstr. May 21, 2019) (denying reimbursement for office supplies, including binders CDs, and notepads). Furthermore, Petitioner has not provided receipts for these purchases. Instead, she filed search results from Staples.com to demonstrate how much the items might typically cost. *See* ECF No. 41-2 at 30–34. I will therefore deduct this amount from Petitioner's award.

Accordingly, Petitioner is entitled to final attorneys' costs in the amount of **$15,689.28.**

## II.   Conclusion

Petitioner's motion is hereby **GRANTED**. In accordance with the Vaccine Act, 42 U.S.C. § 300aa-15(e), the undersigned has reviewed the billing records and costs in this case and finds that Petitioner's request for fees and costs, other than the reductions delineated above, is reasonable. Based on the above analysis, the undersigned finds that it is reasonable to compensate Petitioner and her counsel as follows:

| Attorneys' Fees Requested | $35,142.10 |
|---|---|
| (Reduction to Fees) | - ($4,196.86) |
| **Total Attorneys' Fees Awarded** | **$30,945.24** |
| | |
| Attorneys' Costs Requested | $29,221.28 |
| (Reduction of Costs) | - ($13,532.00) |
| **Total Attorneys' Costs Awarded** | **$15,689.28** |
| | |
| **Total Attorneys' Fees and Costs** | **$46,634.52** |

Accordingly, the undersigned awards a lump sum in the amount of **$46,634.52** to be issued in the form of a check payable jointly to Petitioner and Petitioner's counsel, Mr. Michael Kolker, for final attorneys' fees and costs.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of the above Decision.[8]

**IT IS SO ORDERED.**

s/Herbrina D. Sanders
Herbrina D. Sanders
Special Master

---

[8] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of a notice renouncing the right to seek review.